UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY DAVID RAMIREZ-CASTELLANOS and FRANCISCO JAVIER GOMEZ ESPINOZA,<br><br>Plaintiffs,<br><br>v.<br><br>NUGGET MARKET, INC. DBA NUGGET MARKETS and ONE STOP SERVICES DBA ONE STOP SOLUTION, and DOES 1-10,<br><br>Defendants. | No. 2:17-cv-01025-JAM-AC<br><br>**ORDER GRANTING LEAVE TO AMEND COMPLAINT** |

This matter is before the Court on Plaintiffs' Motion to Amend. Mot. to Amend, ECF No. 30. This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). For the reasons set forth below, Plaintiffs' motion is granted.

I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

One Stop Solutions ("One Stop") was a custodial service that contracted out its employees to various companies. Mot. at 2.

1

One Stop hired Ramirez-Castellanos to work at Nugget Market's Mace Boulevard location in Davis, CA. Id. Ramirez-Castellanos contends that while he was there, Nugget Market's night managers subjected him to "harassing conduct," including anti-Salvadorian insults. Ultimately, One Stop fired Ramirez-Castellanos. Id. On May 16, 2017, he, along with Francisco Javier Gomez Espinoza[1], filed a complaint against Nugget Market, Inc., One Stop, and ten "Doe" defendants. See Compl., ECF No. 1. Plaintiffs contend that "Nugget [Market] pressured One Stop to fire Plaintiff Ramirez-Castellanos because he complained about the workplace racial harassment." Mot. at 2.

The parties filed a Proposed Joint Case Management Order two months later. ECF No. 6. There, Plaintiffs noted that they joined "Does 1-10" as defendants because they anticipated joining additional parties "if One Stop [had] a successor in interest." Id. at 4. The Court issued a scheduling order, dismissing all of Plaintiffs' claims against fictitiously-named defendants. Scheduling Order at 2, ECF No. 7. Plaintiffs filed an unopposed objection to this scheduling order, requesting that the Court "[r]einstate one Doe Defendant . . . so that Plaintiffs' opportunity to replace Doe 1 with an entity or person who has assumed liability for One Stop's illegal acts, such as a successor in interest, will not be prejudiced." Obj'n at 2, ECF No. 11.

---

[1] The Court requests a status update on Plaintiff Francisco Javier Gomez Espinoza. Neither the current motion, the original complaint, nor the proposed amended complaint makes clear whether Espinoza's claims have the same factual predicate as Ramirez-Castellanos's. The parties are ordered to file a joint statement addressing this issue within five days of the date of this Order.

1 | In June 2018, the parties filed a Joint Stipulation to
extend the scheduling order's deadline for discovery to September
13, 2018. ECF No. 26. In the stipulation, Plaintiffs noted that
they "anticipate[d] filing a motion to add or replace Is[s]a
Quarra as a named defendant in this action." Id. at 3. Two
weeks before the September deadline, Plaintiffs filed a motion to
amend their complaint, seeking to join Issa Quarra and Business
Management Group ("BMG") as defendants under an "alter ego"
theory of liability. Mot. to Amend, ECF No. 30. Quarra owned
the now-dissolved corporation, One Stop, and currently owns BMG—
the corporation that Nugget Market now contracts with for
janitorial services. Id. at 4-5.

Plaintiffs maintain they did not learn of Nugget Market's
continued contractual relationship with Quarra until June 2018
when they deposed Nugget Market's Mace Boulevard Store Director,
Laura Bettencourt. Id. In July, they deposed another Nugget
Market Director, Mary Muller, who said she "believe[d]" Quarra's
new company was called "Business Management Company." Id. at 5.
Plaintiffs contend that this was the first time they had heard
about BMG. Id. at 4-5. They confirmed the tie between Quarra
and BMG in August before filing their Motion to Amend. Id. at 5
n.5. Plaintiffs argue they should be able to amend their
complaint based on this newly-discovered information. Id. at 1-
2.

## II. OPINION

A. Legal Standard

After the Court has filed a pretrial scheduling order, a

party's motion to amend must satisfy Rule 16(b)'s "good cause" requirement. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992). This requirement primarily looks to "the diligence of the party seeking the amendment." Johnson, 975 F.2d at 609. "[T]he existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion." Id. But, unlike Rule 15's analysis, "the focus of the inquiry is upon the moving party's reasons for seeking modification [of the schedule]." Id. If the "[moving] party was not diligent, the inquiry should end." Id.

Even if "good cause" is shown, the moving party must still "demonstrate that the amendment [is] proper under Rule 15." Id. at 608 (quoting Forstmann v. Culp, 114 F.R.D. 83, 85 (M.D.N.C. 1987). Rule 15 requires the Court freely grant leave to amend "when justice so requires." Foman v. Davis, 371 U.S. 178, 182 (1962). Although the Court should not grant leave to amend under Rule 15 "automatically," granting leave will be appropriate absent a showing of bad faith, undue delay, prejudice to the opposing party, or futility of amendment. In re Western States Wholesale Natural Gas ("In re Western States"), 715 F.3d 716, 738 (9th Cir. 2013).

B. Analysis

1. Rule 16(b)

The "good cause" requirement "typically will not be met where the party seeking to modify the pretrial scheduling order has been aware of the facts and theories supporting amendment since the inception of the action." Id. at 737. Indeed, "carelessness is not compatible with a finding of diligence and

4

offers no reason for a grant of relief." Johnson, 975 F.2d at 610.

This case is distinct from the cases that were before the Ninth Circuit in Johnson and In re Western States. The plaintiff in Johnson sued Mammoth Recreations, Inc. after a ski-lift accident. 975 F.2d at 606. On two different occasions prior to the scheduling order's deadline for joining additional parties, the defendant informed Johnson that Mammoth Recreations was not the entity that owned and operated the ski lift; the correct defendant was Mammoth Mountain Ski Area. Id. at 606-07. Mammoth Recreations even offered to stipulate to a substitution of the proper party. Id. at 607. Still, Johnson failed to file a motion to amend his complaint until four months after the scheduling order's deadline for joining parties. Id. at 607. The Court denied Johnson's motion to amend, finding that Johnson's failure to "heed clear and repeated signals that not all necessary parties had been named in the complaint [did] not constitute diligence." Id. at 609.

Similarly, in In re Western States, plaintiffs knew for two years that they had potentially viable federal antitrust claims. 715 F.3d at 737. Yet, they did not move to amend their complaint to include these claims until seven months after the scheduling order's deadline. Id. Comparing the case to Johnson, the Ninth Circuit again held that "the district court [had] not abuse[d] its discretion in concluding that the Plaintiffs were not diligent." Id. at 737-38.

This case, however, is not one where Plaintiffs simply sat on their hands as the Court's deadlines passed them by.

Plaintiffs argue that they have been diligent, but that "despite best efforts, [] were unable to confirm that Mr. Quarra treated Building Maintenance Group and One Stop as alter ego companies until June 20, 2018." Mot. at 13. The parties dispute at what point Plaintiff knew or should have known Quarra was the owner of One Stop. See Mot. at 3 (suggesting Plaintiffs did not know about Quarra's position as owner of One Stop until April 13, 2018) contra Opp'n at 2 (arguing Plaintiffs have known since June 2017 that Quarra owned One Stop). But Nugget Market does not contest Plaintiffs' claim that they did not find out Nugget Market was still contracting with Quarra until June 2018, and that they did not learn the name of Quarra's new company until July 2018. See Mot. at 4-5; Opp'n at 4.

In Plaintiffs' original complaint, they named ten fictitious defendants, so they could later join One Stop's successor(s) in interest. Plaintiffs again notified defendants of this intention in their unopposed opposition to the Court's scheduling order, and in the parties' stipulation to extend discovery. Meanwhile, Plaintiffs deposed several of Nugget Market's employees in hopes of discovering the "entity or person who ha[d] assumed liability for One Stop's illegal acts." See Mot. at 3-5.

Although Plaintiffs could have acted more expeditiously, the Court finds that Nugget Market was not as cooperative as the defendant in Johnson. Unlike Mammoth Recreation, who provided Johnson with the information necessary to join the correct defendant, Nugget Market was only minimally forthcoming in response to Plaintiffs' interrogatories. See Mot. at Exhibit 2.

It is true that litigation in the United States is adversarial in nature. But a defendant may not hide the ball, only to later complain that the plaintiff took too long to find it.

Nugget Market's opposition overlooks the Rule 16(b) question, only analyzing the Rule 15(a) factors. See Opp'n at 5. Absent any objection to Plaintiffs' claims of diligence, the Court finds that Plaintiffs made the requisite showing of "good cause." Further, as discussed below, Nugget Market will not be prejudiced if Plaintiffs are allowed to modify the pretrial schedule, and amend their complaint. Accordingly, the Court finds that Plaintiffs have satisfied Rule 16(b)'s requirements.

2. Rule 15(a)

Rule 15 requires that leave to amend be freely given when justice so requires. Fed. R. Civ. P. 15(a). The Ninth Circuit has repeatedly stated that "this policy is to be applied with extreme liberality." See, e.g., Owens v. Kaiser Foundation Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001); Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). None of the factors that the Court must consider in this analysis—bad faith, undue delay, prejudice to the opposing party, and futility—suggest that Plaintiffs' motion falls short of Rule 15's low bar.

a. Bad Faith & Undue Delay

Plaintiffs' Motion to Amend is not being sought in bad faith. Nugget Market views the "undue delay" and "bad faith" factors in tandem, arguing that the timing of Plaintiffs' motion is an exercise in sharp practices. Opp'n at 5-7. It argues that Plaintiffs' claims of newly-discovered information are

7

"implausible" and nothing more than an "attempt to expand the scope of this litigation and avoid summary judgment." Id. at 6-7.

In DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1986), the Ninth Circuit addressed a similar argument. There, the plaintiff moved to join a new defendant over a year after initiating the suit. The party to be added objected, arguing that plaintiffs' "'unjust delay' in seeking to name it as a defendant [was] evidence of bad faith." Id. The court rejected this argument, finding that the fourteen-month-old suit was "still in its early stages," that moving party "offered a satisfactory explanation for their delay," and that "there [was] no evidence in the record which would indicate a wrongful motive." Id.

Like the opposing party in DCD Programs, Ltd., Nugget Market fails to substantiate its accusations of bad faith. The Court is not persuaded by Nugget Market's argument that the "W&F Enterprise" label on Ramirez-Castellanos's paystub provided a key to all of the information Plaintiffs needed. See Opp'n at 3. W&F Enterprise's corporate documents would have revealed that Quarra owned both W&F Enterprise and One Stop. Id. But these records would not have given Plaintiffs the information they needed to allege an alter-ego theory of liability, i.e. that Nugget Market continues to contract with Quarra through Building Management Group. Indeed, Nugget Market does not contend that Plaintiffs could have obtained this particular information any earlier than they did.

Also, this case, like the one in DCD Programs, Ltd., 833

F.2d at 185, is only a little over a year old.  This is an insufficient delay to make a showing of bad faith where Plaintiffs have "offered a satisfactory explanation" for why they waited.  See id. at 187.  As discussed above, Plaintiffs did not obtain the information they needed to allege an alter-ego theory of liability until the month before he filed his motion to amend.  Without addressing the merits of this theory, the Court finds that Plaintiffs' explanation is satisfactory.

### b. Prejudice

The Court also finds that Plaintiffs' motion to amend will not cause Nugget Market undue prejudice.  Prejudice is the "touchstone of the inquiry under rule 15(a)." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). Indeed, "it is the consideration of prejudice to the opposing party that carries the greatest weight" when a court decides whether granting leave to amend is proper. Id.  But "[b]ald assertions of prejudice cannot overcome the strong policy reflected in Rule 15(a) to facilitate a proper disposition on the merits." Hurn v. Retirement Fund Trust of Plumbing, Heating and Piping Industry of Southern California, 648 F.2d 1252, 1254 (9th Cir. 1981) (internal quotes omitted).

In Hurn, the Ninth Circuit found that the defendant would not be unduly prejudiced by the plaintiff's proposed amendment. Id. at 1255.  There, the defendant could not "point to any specific shortcomings in discovery presented by [the] new [] claim." Id.  There was no indication that defendant had "otherwise compromised its position" by focusing on the earlier claim.  Id.  And "the operative facts remain[ed] the same." Id.

On the other hand, in <u>Morongo Band of Mission Indians</u>, 893 F.2d at 1079, the Court of Appeals found defendants were unduly prejudiced because the new claims set forth "would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense."

Plaintiffs argue that, unlike the defendants in <u>Morongo Band of Mission Indians</u>, "Nugget [Market] will not have to substantially change its litigation strategy to account for the addition of Mr. Quarra or Building Maintenance Group." Mot. at 12. This Court agrees. Plaintiffs' alter-ego theory of liability does not materially change the operative facts of this case. The crux of Plaintiffs' original complaint was that the joint-employment relationship between Nugget Market and One Stop subjected Plaintiffs to a hostile work environment, retaliation, and wrongful termination. <u>See</u> Compl. at ¶¶ 8-90. Those allegations remain the same. <u>See</u> Proposed First Amended Complaint at ¶¶ 9-95, ECF No. 30-5. Plaintiffs seek only to bring in the company that they argue is "identical" to One Stop, and the individual who owns both businesses—a tactic they've foreshadowed since the onset of litigation. Mot. at 12.

Nugget Market cites <u>Hayes v. New England Millwork Distributors, Inc.</u>, 502 F.2d 15 (1st Cir. 1979), to support its argument that adding "two new defendants would initiate an entirely new phase of discovery . . . causing substantial and unfair prejudice to Nugget." Mot. at 7. <u>Hayes</u>, however, is neither binding nor particularly on point. After "allow[ing] his case to lie fallow for more than two years," the plaintiff in

10

Hayes, sought to amend his complaint. 502 F.2d at 20. This amendment would have joined a union as a defendant, and charged the originally-named defendant "with conspiring with the union to deprive appellant of his rights." Id. And although this charge had "not [been] contemplated by the original complaint," Hayes did not justify the deviation by arguing on appeal "that discovery led to previously unknown facts which altered the shape of his case." Id.

Plaintiffs are not arguing that Mr. Quarra and Building Management Group conspired with One Stop to discriminate and retaliate against them. They are arguing that Mr. Quarra and Building Management Group are indistinguishable from One Stop. Mot. at 12. Plaintiffs have been attempting to identify One Stop's successor in interest since the beginning of the case, and made clear their intent to join that entity, if found, as a defendant. Mot. at 2-4. The Court finds that Nugget Market is not prejudiced by Plaintiffs' follow-through.

### c. Futility

Leave to amend will not be granted if the amendment would be futile. DCD Programs, Ltd., 833 F.2d at 188. An amendment will not be futile "unless it appears beyond doubt" that Plaintiffs' amended complaint "could prove no set of facts in support of their claims which would entitle them to relief." Id. (internal brackets omitted).

Plaintiffs argue that they "seek to add Mr. Quarra and his janitorial company Building Maintenance Group as co-defendants on the basis of alter ego, or, in the alternative, third-party liability." Mot. at 10. Nugget Market does not meaningfully

respond to Plaintiffs' allegations. It merely claims that "[o]n the whole, Plaintiffs provide no evidence from which to allege any claims against Mr. Quarra or BMG based on information and belief." Opp'n at 9. This Court disagrees. Because Nugget Market has not shown how Plaintiffs' proposed amendment fails to state a colorable claim for relief, the Court finds that the amendment would not be futile.

### III. ORDER

For the reasons set forth above, the Court GRANTS Plaintiffs' Motion to Amend. Nugget Market's request to impose costs as a condition of granting leave to amend is DENIED. Plaintiffs shall file their amended Complaint within five days of the date of this Order. Nugget Market's responsive pleading is due within twenty days thereafter. The Court also vacates the original and modified scheduling orders at ECF Nos. 7 and 27. The parties shall file a joint status conference statement within sixty days of the date of this Order, setting new deadlines for completing discovery and filing dispositive motions. The parties must also stipulate to new dates for trial and the pretrial conference.

IT IS SO ORDERED.

Dated: November 8, 2018

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE