1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                    EASTERN DISTRICT OF CALIFORNIA

11

12   JIMMY DAVID RAMIREZ-              No.  2:17-cv-01025-JAM-AC
     CASTELLANOS and FRANCISCO
13   JAVIER GOMEZ ESPINOZA,

14            Plaintiffs,             **ORDER GRANTING IN PART AND
                                      DENYING IN PART DEFENDANT NUGGET
15       v.                          MARKETS' MOTION FOR SUMMARY
                                      JUDGMENT**
16   NUGGET MARKET, INC. DBA
     NUGGET MARKETS AND ONE STOP
17   SERVICES DBA ONE STOP
     SOLUTION, AND DOES 1-10,
18
              Defendants.
19

20       Jimmy David Ramirez-Castellanos ("Ramirez-Castellanos") and

21   Francisco Javier Gomez Espinoza("Espinoza") (collectively

22   "Plaintiffs") sued their former employers, Defendants Nugget

23   Market, Inc., dba Nugget Markets ("Nugget"), One Stop, and Issa

24   Quara, for allegedly discriminating and retaliating against them

25   based on their Latino national origin.  First Amend. Compl.

26   ("FAC"), ECF No. 45.  Defendant Nugget now moves for summary

27   judgment, Mot. Summ. J. ("Mot."), ECF No. 92.  Plaintiffs oppose

28   this Motion.  Opp'n, ECF No. 102.  For the reasons set forth

                                    1

1  below the Court GRANTS in part and DENIES in part Defendant's

2  motion for summary judgment.[1]

3

4        I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

5        Plaintiffs bring this action against Defendant Nugget for

6  alleged employment discrimination based on their Latino origin

7  under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 1981,

8  California's Fair Housing and Employment Act ("FEHA"), and common

9  law prohibitions on wrongful discharge.  FAC at 1-2.

10       A.   Plaintiffs' Employment

11       Plaintiff Espinoza is an immigrant from Mexico and does not

12  speak English fluently.  Opp'n at 1 n.1.  He worked for Nugget

13  from 2006 to 2008, and then returned in 2011 as a janitorial

14  associate.  Mot. at 2.  Nugget promoted him to night stock crew

15  associate in November 2014.

16       Nugget contracted with Defendant Quarra and his janitorial

17  companies—One Stop and Building Maintenance Group ("BMG")—for

18  floor cleaners.  Opp'n at 2.  Around the same time Espinoza was

19  promoted, One Stop's supervisor hired Ramirez-Castellanos to work

20  exclusively at Nugget as a night-shift floor cleaner.  Id.

21  Ramirez-Castellanos is an immigrant from El Salvador and also

22  does not speak English fluently.  Id. at 2 n.3

23       Because Ramirez-Castellanos was hired by One-Stop, the

24  Parties dispute whether he was employed by Nugget.  Defendant

25  maintains it had generally no control over him.  Mot. at 4.  But

26  ────────────

27  [1] This motion was determined to be suitable for decision without
    oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28  scheduled for April 7, 2020.

                            2

1  Plaintiffs contend the opposite.  Opp'n at 2.  They state

2  Nugget's maintenance director judged the quality of Ramirez-

3  Castellanos' work, instructed him on how to perform his duties,

4  and assigned him tasks, among other things.  Id. at 3.

5      B.   Alleged Discrimination

6      The Parties also dispute whether Plaintiffs suffered any

7  discrimination on account of their race and national origin.

8  According to Plaintiffs, they took their job seriously and both

9  received positive feedback about their work.  Opp'n at 3.

10 However, their enthusiasm waned when Managers Lisset Sanchez and

11 Blake Billings began to make discriminatory remarks about Latinos

12 and other minorities on a nearly daily basis.  Id. at 3.

13     According to Defendant, Plaintiffs were not discriminated

14 against and instead were simply performing poorly at work.  Mot.

15 at 3-4.  Because Manager Sanchez encouraged Plaintiffs to focus

16 on their work, there was friction between them.  Id.  Thus,

17 Espinoza complained that Sanchez "made him feel stupid" and

18 Ramirez-Castellanos was angry and rude towards her.  Id.

19 Moreover, Defendant contends Ramirez-Castellanos did not make

20 Nugget aware that he was allegedly being discriminated against.

21 Id. at 5.

22     C.   Reporting Incidents

23     The Parties also dispute whether Plaintiffs reported the

24 alleged discrimination.  Plaintiffs contend Ramirez-Castellanos

25 first reported the discrimination to his One Stop manager and to

26 Nugget Grocery Manager Rebecca Reichardt, in April and May 2015

27 respectively.  Id.  Reichardt allegedly told him he was a liar

28 and to "shut up and go on working, or else."  Id.  He continued

to report the discrimination to his One Stop Supervisor for the following ten months.  Id.  But according to Defendant, Ramirez-Castellanos never reported any discrimination until after his termination.  Mot. at 5.

The parties agree that Espinoza had two meetings in May and June of 2015 with Nugget management.  But they disagree as to the substance of the meetings.  Plaintiffs maintain Espinoza met with management on May 2015 because he complained about the discrimination and requested to be transferred to a different store.  Id.  Since he complained, the managers attempted to manufacture performance issues for Espinoza and gave him his first and only less than positive review.  Id.  At the meeting, the managers denied his request to transfer, scrutinized his job performance, and tried to convince him he was not being discriminated against.  Id.  Management told him he was only targeted because he was not "completing what he needs to do." Id.

The harassment allegedly continued so Espinoza had another meeting with the HR director on June 2, 2015.  Id.  Once again, he claims the managers over scrutinized his work performance rather than focus on the discrimination complaints.  Id.  They had the maintenance director interpret for him, but Espinoza decided to switch over to his broken English because he could not rely on the selective interpretation.  Id.  He told them as best he could about the incidents of discrimination and asked once again to transfer stores.  Id.  But the managers ignored him, and Manager Sanchez kept harassing Espinoza up until she left for medical leave in May 2016.  Id.

1     Defendant, on the other hand, contends these meetings were

2 not because of Espinoza's complaints about discrimination, but

3 rather a result of his poor performance.  Mot. at 2.  For

4 example, at the May 20, 2015 meeting he said he was slower at

5 stocking shelves because of a language barrier but did not

6 indicate any discrimination.  Id.  And Nugget only held the June

7 2, 2015 meeting because Espinoza told Manager Billings that

8 Manager Sanchez discriminated against him by "making him feel

9 stupid." Id. at 3.  The maintenance director translated for

10 Espinoza but he did not indicate he was being discriminated

11 against.  Id.  The meeting focused on helping Espinoza improve

12 his performance, and after the meeting, Nugget coached Sanchez

13 on how to properly give advice to Espinoza.  Id.

14     D.   Termination of Employment

15     Lastly, the parties also dispute Plaintiffs' termination of

16 employment at Nugget.  According to Plaintiffs, Ramirez-

17 Castellano was fired around December 2015 because Nugget

18 threatened to terminate their contract with One Stop if Nugget

19 did not fire him.  Opp'n at 7.  Espinoza, on the other hand,

20 worked until June 2016 when he reluctantly left Nugget because he

21 could no longer handle the hostile work environment.  Id.

22     Conversely, Defendant contends Ramirez-Castellanos was only

23 fired by One Stop, because of his failure to complete his

24 cleaning duties according to the services contract with Nugget.

25 Mot. at 5.  Moreover, Espinoza abandoned his job without ever

26 notifying Nugget that he was leaving.  Id. at 3.  Defendant

27 contends Espinoza left early one day due to a "family emergency"

28 and never returned.  Id.

1                           II.   OPINION

2          A.   Judicial Notice

3          Plaintiffs ask the Court to take judicial notice of the

4    work-sharing agreement between the California Department of Fair

5    Employment and Housing ("DFEH") and the U.S. Equal Employment

6    Opportunity Commission ("EEOC"), along with four facts in the

7    agreement.   See Plf's Req. for Judicial Notice, ECF No. 103.

8    Defendant does not oppose this request.

9          Under Federal Rule of Evidence 201, a district court may

10   take judicial notice of a fact that is "not subject to

11   reasonable dispute because it can be accurately and readily

12   determined from sources whose accuracy cannot reasonably be

13   questioned."   Fed. R. Evid. 201(b)(2).   It is well-established

14   that "a court may take judicial notice of matters of public

15   record."   Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th

16   Cir. 2001).   The DFEH and EEOC work-sharing agreement is a

17   matter of public record.   As such, other Courts have taken

18   judicial notice of this agreement.   See, e.g., Saling v. Royal,

19   No. 2:13-CV-1039-TLN-EFB, 2015 WL 5255367, at *9 n. 5 (E.D. Cal.

20   Sept. 9, 2015); Hause v. The Salvation Army, No. CV07-5249CAS

21   CWX, 2007 WL 4219450, at *1 n. 2 (C.D. Cal. Nov. 27, 2007).

22   Since this request is unopposed and since it is proper under

23   Federal Rule of Evidence 201, the Court GRANTS Plaintiffs'

24   request.

25         B.   Evidentiary Objections

26         The Parties raise numerous evidentiary objections in their

27   Opposition and Reply briefs.   See ECF Nos. 104, 109-3.   This

28   Court has reviewed the parties' evidentiary objections but

                                    6

1  declines to individually rule on each one.  Since "courts self-

2  police evidentiary issues on motions for summary judgment," a

3  formal evidentiary ruling is unnecessary to the determination of

4  these motions.  Henry v. Central Freight Lines, Inc., No. 2:16-

5  cv-00280, 2019 WL 2465330, at * 2 (E.D. Cal. June 13, 2019).

6      C.   Legal Standard

7      Summary judgment is appropriate, when the moving party

8  "shows that there is no genuine dispute as to any material fact

9  and the movant is entitled to judgment as a matter of law."

10  Fed. R. Civ. P. 56(a).  The moving party bears the burden of

11  "informing the court of the basis for its motion and identifying

12  [the documents] which it believes demonstrate the absence of a

13  genuine issue of material fact."  Celotex Corp. v. Catrett, 477

14  317, 323 (1986)(internal quotations omitted).  A fact is

15  "material" if it "might affect the outcome of the suit under the

16  governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

17  248 (1986).  Moreover, "[t]he evidence of the non-movant is to

18  be believed, and all justifiable inferences are to be drawn in

19  his favor."  Id. at 255.

20      If the moving party meets its initial burden, the burden

21  shifts to the opposing party to establish that "there is a

22  genuine issue for trial."  Id. at 248.  An issue of fact is

23  genuine if "the evidence is such that a reasonable jury could

24  return a verdict for the nonmoving party."  Id.

25      D.   Analysis

26          1.   Exhaustion of Administrative Remedies

27      Defendant argues Plaintiffs have not exhausted their

28  administrative remedies with respect to their FEHA claims,

1  because they did not obtain Right-to-Sue Notices from the

2  Department of Fair Employment and Housing (DFEH) prior to filing

3  this suit.  Mot at 6-7.  Plaintiffs argue an administrative

4  error at the DFEH prevented them from obtaining the notices, so

5  they should not be penalized for a mistake they did not commit.

6  Opp'n at 10.

7      To bring a civil action under FEHA, "the aggrieved person

8  must exhaust the administrative remedies provided by law."

9  Rodriguez v. Airborne Express, 265 F.3d 890, 896 (9th Cir.

10  2001).  Accordingly, the employee must file a written charge

11  with DFEH within one year of the alleged unlawful employment

12  discrimination.  Cal. Gov't Code § 12960.  If after 150 days

13  from filing the complaint DFEH does not issue a civil action

14  against the employer, it shall notify the employee in writing

15  "that it will use, on request, the right-to-sue notice."  Id. at

16  § 12965(b).  If the employee does not make such a request, the

17  DFEH must issue the notice no later than one year after the

18  filing of the complaint.  Id.  Regardless of how it is obtained,

19  the notice is a "prerequisite to judicial action."  Rojo v.

20  Kliger, 52 Cal. 3d 65, 83 (1990).  Moreover, the employee must

21  file a claim for violation of the FEHA within one year of

22  receipt of the right-to-sue notice from the DFEH.  Id. at

23  § 12965(d)(1).

24      Plaintiffs Ramirez-Castellanos and Espinoza timely dual

25  filed an administrative charge with the EEOC and DFEH on October

26  3, 2016 and March 14, 2017, respectively.  Mot. at 6.

27  Plaintiffs requested and obtained Right-to-Sue Notices from the

28  EEOC on April 19, 2017 and May 9, 2017, respectively.  Id.

1    Plaintiffs' then filed this suit on May 16, 2017.  Compl., ECF

2    No. 1.  However, they had not yet obtained Right-to-Sue notices

3    from the DFEH—a prerequisite to filing their FEHA claims before

4    this Court.  In fact, Plaintiffs only requested their notices

5    from the DFEH in April 2018, after Defendant's attorney brought

6    the lack of notice to their attention.  Mot at 13.  The DFEH

7    issued their notices shortly after, stating they did not provide

8    them sooner because of an administrative error.  Opp'n at 16.

9         Defendant argues obtaining their notices from the DFEH

10    nearly a year after filing their suit, does not remedy

11    Plaintiffs' failure to initially meet that exhaustion

12    requirement.  Reply. 3.  Indeed, although Plaintiffs' had their

13    EEOC right-to-sue letter prior to commencing this suit, an EEOC

14    notice "does not satisfy the jurisdictional requirement of

15    exhaustion of remedies as to FEHA claims."  Mot. at 7 (quoting

16    Alberti v. City & Council of San Francisco Sheriff's Dept., 32

17    F. Supp. 2d 1164, 1174 (N.D. Cal. 1998)).  Instead, an EEOC

18    notice only satisfies the exhaustion requirements for "action[s]

19    based on Title VII."  Martin v. Lockheed Missiles & Space Co.,

20    29 Cal. App. 4th 1718, 1726 (1994).  Accordingly, Plaintiffs

21    needed to have obtained their DFEH notices prior to commencing

22    this suit to properly exhaust their remedies.

23         Moreover, the DFEH's administrative error does not excuse

24    Plaintiffs' failure to exhaust administrative remedies.  The

25    DFEH was required to issue notices, even if Plaintiffs did not

26    request them, "upon completion of their investigation, and not

27    later than one year after [the charges were filed]."  Cal. Gov't

28    Code § 12965(b).  Therefore, the DFEH did err by issuing the

1    notices on April 2018, since it should have issued them by
2    October 2017 and March 2018, a year after the chargers had been
3    filed.  But this error is not to blame for Plaintiffs' failure.
4    Plaintiffs should have requested the notices before they filed
5    suit in May 2017, just as they did with the EEOC.  Plaintiffs
6    have not even contended that they ever requested their notices
7    prior to commencing this suit.  See Opp'n.  Accordingly,
8    Plaintiffs' reliance on Grant v. Comp. USA, Inc., is misplaced.
9    109 Cal. App. 4th 637 (2003) (excusing plaintiff's failure to
10   obtain notice of right to sue, because she filed the suit after
11   the DFEH was required to issue the notice).

12       The Court finds Plaintiffs' FEHA claims fail as a matter of
13   law, because they did not exhaust their administrative remedies
14   before filing those claims.  The Court therefore GRANTS summary
15   judgment on Plaintiffs' third and sixth causes of action.

16              2.   Plaintiff Ramirez-Castellanos' Employment
17       Defendant argues Plaintiff Ramirez-Castellanos' claims
18   against Nugget also fail as a matter of law because he was not a
19   Nugget employee.  Mot. at 7.  Plaintiffs, on the other hand,
20   argue Defendants Nugget and One Stop jointly employed Plaintiff
21   Ramirez-Castellanos.  Opp'n 11.

22              a.   Applicable Employment Test
23       The parties do not dispute that courts must apply the
24   common-law test, in both Title VII and Section 1981 claims, to
25   determine whether a defendant is a joint employer.  Reply at 4
26   n. 2; Opp'n at 11.  They do dispute, however, which common law
27   test the Court should adopt.  Plaintiffs argue the Court should
28   adopt the common-law agency test adopted by the Ninth Circuit in

1  U.S. Equal Employment Opportunity Commission v. Global Horizons,

2  Inc., 915 F.3d 631 (9th Cir. 2019).  Conversely, Defendant

3  argues the Court should not rely solely on that analysis and

4  should instead also consider case law in other circuits.  Reply

5  at 10.  The Court disagrees.

6      Supreme Court precedent dictates that "the common-law

7  agency test" governs when statutes like Title VII, "do not

8  meaningfully define terms like 'employer' and 'employee.'"

9  Global Horizon, 915 F.3d at 638.  Accordingly, the Ninth Circuit

10 expressly decided "the common-law agency test is the most

11 appropriate one for Title VII purposes."  Id.  And while the

12 court did look to the Fifth and Seventh Circuits' analysis when

13 considering automatic liability of a joint employer, it only did

14 so to expressly adopt that standard.  Id.  In other words, just

15 as it had expressly decided that in the Ninth Circuit the

16 common-law agency test governs, it also expressly decided that

17 one joint employer is not automatically liable for the actions

18 of the other.  Id.  This Court is bound by those two

19 conclusions.  Accordingly, the Court need not look elsewhere, as

20 Defendant pleads, when analyzing joint employment.  As other

21 courts within this circuit have done, this Court will only

22 employ the Ninth Circuit analysis as set-forth in Global

23 Horizons.  See e.g., Horn v. Experis US Inc., No. 17-cv-0814,

24 2019 WL 2868963, at *6 (E.D. Cal. July 3, 2019), adopted by this

25 court, No. 17-cv-0814, 2019 WL 4955189 (E.D. Cal. Oct 8, 2019);

26 see also Di-az v. Tesla, Inc., No. 3:17-cv-06748, 2019 WL

27 7311990, at *8 (N.D. Cal. Dec. 30, 2019).

28 ///

1          b.   Analysis

2          Under the common-law agency test, "the principal guidepost"

3   is the element of control." Global Horizons, 915 F.3d at 638.

4   The element of control is "the extent of control that one may

5   exercise over the details of the work of the other." Id.

6   (quoting Clackamas Gastroenterology Assoc., P.C. V. Wells, 538

7   U.S. 440, 448 (2003)). Courts consider the following non-

8   exhaustive list of factors when analyzing control:

9          the skill required; the source of the instrumentalities
           and tools; the location of the work; the duration of
10         the relationship between the parties; whether the
           hiring party has the right to assign additional
11         projects to the hired party; the extent of the hired
           party's discretion over when and how long to work; the
12         method of payment; the hired party's role in hiring and
           paying assistants; whether the work is part of the
13         regular business of the hiring party; whether the
           hiring party is in business; the provision of employee
14         benefits; and the tax treatment of the hired party.

15         Id.  No one factor is decisive; "all of the incidents of

16   the relationship must be assessed and weighed." Id.

17         Plaintiffs argue Defendant jointly employed Plaintiff

18   Ramirez-Castellanos with One Stop, because Nugget asserted

19   significant control over him.  Opp'n at 11.  For example,

20   Plaintiff argues: (1) Nugget supervisors and managers determined

21   the quality of and instructed Ramirez-Castellanos's work; (2) he

22   worked with Nugget employees daily; (3) he rarely communicated

23   with One Stop; (4) Nugget provided most of his cleaning

24   supplies; and (5) Nugget assigned work to him and determined he

25   could no longer work for them.  Id.

26         Defendant disputes all of this, while at the same time

27   arguing that there is no genuine issue of material fact.  Reply

28   at 7-9.  Defendant contends for instance that: (1) Ramirez-

1   Castellanos communicated with One Stop at least once a day;

2   (2) providing him with cleaning supplies does not support he was

3   joint employed by Nugget; (3) not granting him access to the

4   store without a Nugget employee implies he is <u>not</u> a Nugget

5   employee; (4) One Stop hiring him to clean Nugget's floors,

6   implies it is outside the scope of Nugget employees to clean

7   floors, and (5) the award Nugget gave Plaintiff is just a nice

8   "sentiment," but not an indication of control.  <u>Id.</u>  Defendant

9   therefore posits "these facts demonstrate Nugget did not have

10   the level of control necessary for a finding of joint employer

11   status."  Reply at 10.

12       But "[c]redibility determinations, the weighing of the

13   evidence, and the drawing of legitimate inferences from the

14   facts are jury functions," not functions for this Court.

15   <u>Anderson</u>, 477 U.S. at 257.  Defendant cannot have its cake and

16   eat it too.  By disputing Plaintiffs' facts in a lengthy three-

17   page analysis, Defendant implicitly admits there are genuine

18   issues of material fact.  Whether Defendant jointly employed

19   Plaintiff Ramirez-Castellanos is for a jury to decide.  The

20   Court therefore denies summary judgment on Ramirez-Castellanos'

21   claims on this basis and does not need to address Plaintiffs'

22   alternative third-party interference argument.  <u>See</u> Opp'n at 12.

23          3.   <u>Hostile Work Environment</u>

24       Defendant seeks summary judgment on Plaintiffs' first and

25   second causes of action under Title VII and Section 1981 for

26   hostile work environment.  Mot. at 11.  Plaintiffs, in their

27   opposition, argue they can establish a prima facie case of

28   hostile work environment.  Opp'n at 13.

1    Section 1981 guarantees "all persons" the same right "to
2    make and enforce contracts."  42 U.S.C. § 1981.  A hostile work
3    environment violates this guarantee by interfering with "the
4    enjoyment of all benefits . . . and conditions of the
5    contractual [employment] relationship."  Manatt v. Bank of
6    America, NA, 339 F.3d 792, 797 (9th Cir. 2003).  Similarly,
7    Title VII of the Civil Rights Act of 1964 makes it unlawful for
8    an employer to discriminate against any individual "because of
9    such individual's race, color, religion, sex, or national
10   origin."  42 U.S.C § 2000e-2.  Accordingly, Title VII prohibits
11   an employer from "requiring people to work in a discriminatorily
12   hostile or abusive environment."  Harris v. Forklift Sys., Inc.,
13   510 U.S. 17, 21 (1993).

14       The Ninth Circuit evaluates Section 1981 claims and Title
15   VII claims under the same standard.  Manatt, 339 F.3d at 798.
16   To establish a prima facie hostile work environment under either
17   statute, Plaintiffs must show: (1) they were subjected to verbal
18   or physical conduct because of their race or national origin,
19   (2) the conduct was unwelcome, and (3) the conduct was
20   sufficiently severe or pervasive to alter the conditions of
21   Plaintiffs' employment and create an abusive work environment.
22   Vazquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir.
23   2003).  Lastly, even if a hostile working environment exists,
24   "an employer is only liable for failing to remedy harassment of
25   which it knows or should know."  Id.  The Court addresses each
26   factor in turn.

27           a.   Statute of Limitations
28       When addressing the hostile work environment claim,

14

1    Defendant makes a brief one-sentence argument that Plaintiffs

2    did not meet the Title VII statute of limitations requirement.

3    Mot. 14.  Specifically, Defendant argues Plaintiff Espinoza is

4    barred because he "filed his administrative charge with the EEOC

5    in March 2017, more than one year after he last claims to have

6    experienced harassment at Nugget."  Id.

7        An employee must file an unlawful employment practice with

8    the EEOC within 300 days of the alleged unlawful practice.  42

9    U.S.C § 2000e-5(e)(1); see also National R. R. Passenger Corp.

10   v. Morgan, 536 U.S. 101, 109-10(2002).  "Each discriminatory act

11   starts a new clock for filing charges."  Morgan, 536 at 113.

12   Accordingly, the charge must be filed within the 300-day time

13   period after a discrete discriminator act occurred.  Id.

14       Here, Defendant argues Espinoza's claims are untimely

15   because "the alleged harassing comments" occurred "certainly no

16   later than mid-2016."  Mot. at 13.  Plaintiffs contend Defendant

17   subjected Espinoza to "racist comments" until "at least mid-

18   2016."  Mot. at 14.  That the parties dispute the exact timeline

19   is a genuine dispute of fact.  Nevertheless, if the last

20   harassing comment occurred in mid-2016, then it falls squarely

21   within the 300-day requirement from March 2017.  Accordingly,

22   the Court denies summary judgment on Plaintiff Espinoza's Title

23   VII claims on this basis.

24              b.   Unwelcomed Discriminatory Conduct

25       Plaintiffs argue they were subjected almost daily to "anti-

26   immigrant insults, jokes, and comments, as well as . . . other

27   harassing conduct."  Opp'n at 14.  Plaintiff Espinoza argues

28   this harassment endured throughout his employment from 2011

                                    15

1   through 2016.  Id.  Defendant's maintenance director Martinez,

2   as well as managers Billings and Sanchez, all made "numerous

3   disparaging and racial comments about Latinos."  Id.  For

4   instance, Manager Billings said Mexicans are "cholos,"

5   criminals, and that their work is "shit."  Id. at 15.  Moreover,

6   Manager Sanchez said Latinos are "garbage," do bad work, and

7   steal jobs from Americans.  Id.

8       Plaintiff Ramirez-Castellanos likewise argues he was

9   subjected to similar racial discrimination.  Id.  He contends

10  that Nugget's night managers insulted him, called him names, and

11  mocked his native language, throughout the 10-month period he

12  worked there.  Id.  For example, Manager Billings asked him if

13  he was "shopping," "looking for food," or "eating food" after

14  Ramirez-Castellanos discarded garbage, because that is what

15  "Salvadorian guys do."  Id.  He also told him that "Salvadorian

16  guys are used to looking at dirty floors."  Id.  And he called

17  him a "cabrón," a derogatory Spanish word akin to "dumbass."

18  Id.  Manager Billings also intentionally ran into Ramirez-

19  Castellanos's shoulder as they walked down the aisle, stating

20  "Salvadorians think they are tough."  Id.  Moreover, both

21  Sanchez and Billings told Plaintiff that Salvadorians are "lazy"

22  and "bad workers."  Id.  Sanchez even went as far as to accuse

23  him of theft.  Id.

24      Defendant does not necessarily dispute that there was such

25  discriminatory conduct—it only disputes that it was ever made

26  aware of this alleged harassment.  See Mot.  Accordingly, the

27  Court finds in viewing the facts in the light most favorable to

28  Plaintiffs, a jury could find Plaintiffs have shown they were

1  subjected to verbal and physical harassing conduct on account of

2  their race and national origin.  Neither party addresses the

3  issue of whether this conduct was "unwelcomed."  But based on

4  the nature of the conduct the Court presumes for purposes of

5  summary judgment that the conduct was unwelcomed.

6                    c.   Severe and Pervasive

7       To determine whether discriminatory conduct is sufficiently

8  severe or pervasive, the Court must consider the totality of the

9  circumstances, including: "the frequency of the discriminatory

10 conduct; its severity; whether it was physically threatening or

11 humiliating, or a mere offensive utterance; and whether it

12 unreasonably interferes with an employee's work performance."

13 Vasquez, 349 F.3d at 642.  Moreover, the working environment

14 must be subjectively and objectively perceived as abusive.

15 Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995).

16      Plaintiffs argue the hostile conduct was severe and

17 pervasive because it was "frequent, physically threatening,

18 humiliating, and unreasonably interfered with Plaintiffs' work

19 performance.  Opp'n at 16.  The required level of severity or

20 seriousness of the hostile conduct "varies inversely with the

21 pervasiveness or frequency of the conduct."  Nichols v. Azteca

22 Rest. Enters., Inc., 256 F.3d 864, 872 (9th Cir. 2001).  Here,

23 Plaintiffs allege they were frequently harassed by managers

24 Sanchez and Billings for months and years respectively.

25 Therefore, Defendants' alleged hostile conduct need not be

26 especially severe or serious.  The remaining question, however,

27 is whether the conduct was subjectively and objectively

28 perceived as abusive.

1                          (i)  Objectively Hostile

2          "Whether the workplace is objectively hostile must be

3    determined from the perspective of a reasonable person with the

4    same fundamental characteristics."  Fuller, 47 F.3d at 1527.

5          Defendant argues Plaintiffs' cannot show "a reasonable

6    person in [Plaintiffs'] circumstances would have perceived their

7    work environment as hostile."  Mot. 13.  However, Defendant does

8    not expand on that contention.  See Mot. 13.  Instead, it argues

9    Ramirez-Castellanos "never complained to management" about the

10   alleged harassment "until after" he was terminated.  Id.  It

11   also argues Espinoza no longer suffered harassment after he

12   filed the internal complaint.  Id.

13         But the Court finds Plaintiffs have brought forth enough

14   evidence to show a reasonable person in their circumstance would

15   have perceived the managers' actions as offensive.  Plaintiffs

16   argue two other employees found the statements to be offensive.

17   Opp'n at 17.  For instance, manager Vicente Osegueda admitted he

18   would find the statements offensive.  Id.  Moreover, Plaintiffs

19   contend a separate employee also complained about a statement

20   Martinez made, when he threatened Latino employees "that he

21   could find more people because people that clean the floor were

22   illegal and they just came to get these types of jobs."  Id.

23   Thus, a reasonable man in Plaintiffs' circumstances would have

24   found the hostile conduct "sufficiently severe and pervasive to

25   alter the terms and conditions of his employment."  Nichols, 256

26   F.3d at 873 (finding "the sustained campaign of taunts" directed

27   at Plaintiff "designed to humiliate and anger him," were

28   sufficiently severe and pervasive).

1

(ii) <u>Subjectively Hostile</u>

2       "Assuming that a reasonable person would find a workplace
3   hostile, if the victim 'does not subjectively perceive the
4   environment to be abusive, the conduct has not actually altered
5   the conditions of the victim's employment, and there is no Title
6   VII violation.'"  <u>Nichols</u>, 256 F.3d at 873.

7       Plaintiffs argue their "discrimination complaints, fear
8   that Sanchez and Billings would physically harm them, and
9   [Plaintiff] Espinoza's transfer request" are all proof that they
10  subjectively perceived Nugget's work environment to be hostile.
11  Opp'n at 17.  Moreover, Plaintiffs believed the conduct to be so
12  severe that it even impacted their mental health.  <u>Id.</u> at 16.
13  Ramirez-Castellanos "became withdrawn, turned away from friends,
14  started to drink more," and even stopped working out despite his
15  normal routine of practicing martial arts almost daily.  <u>Id.</u>
16  Moreover, Plaintiffs' mental-health experts found the hostile
17  conduct had a significant effect on Espinoza.  Opp'n at 16
18  (redacted to protect Plaintiff Espinoza's privacy).  Defendant
19  does not dispute that Plaintiffs subjectively found the conduct
20  to be severe and pervasive.  Accordingly, the Court finds
21  Plaintiffs have shown they subjectively found the conduct to be
22  severe and pervasive.  Moreover, because Plaintiffs have
23  satisfied their showing for each element, the Court finds in
24  looking at the evidence in the light most favorable to
25  Plaintiffs, that a jury could find they have demonstrated a
26  prima facie case of a hostile work environment claim.
27  ///
28  ///

1                    d.   Nugget's Knowledge of Harassment

2          Even though Plaintiffs have proven a prima facie case of a

3    hostile work environment, the Court "must [still] consider

4    whether [Defendant] is liable for the harassment." McGinest v.

5    GTE Service Corp., 360 F.3d 1103, 1118 (9th Cir. 2004).  An

6    employer may be held either vicariously liable for the acts of a

7    supervisor or negligently liable for failing to correct or

8    prevent discriminatory conduct by an employee.  Reynaga v.

9    Roseburg Forest Products, 847 F.3d 678, 688-89 (9th Cir. 2017).

10         Here, two managers and a maintenance director were the

11   alleged perpetrators of the hostile work environment.

12   Accordingly, as they are managers and directors, rather than

13   just employees, Defendant is vicariously liable for their

14   behavior.  Defendant argues that its management "was never aware

15   of any complaints Ramirez-Castellanos [made] about race or

16   national origin discrimination," and that Espinoza did not

17   actually complain about discrimination because he qualified his

18   statement by saying Sanchez made him "feel stupid" instead.

19   Mot. at 14.  Yet, Plaintiffs have submitted more than enough

20   evidence to the contrary.  Plaintiffs firmly maintain that they

21   both made Defendant aware, through its managers, that they were

22   victims of discrimination.  Opp'n at 18 n. 13.  Instead of

23   addressing those complaints, Plaintiffs maintain Nugget

24   management simply turned a blind eye.  Id.  Because the Court

25   must view this evidence in the light most favorable to

26   Plaintiffs, the Court finds Plaintiffs have established there is

27   a genuine issue of material fact as to whether Defendant is

28   liable for the hostile work environment.  Therefore, the Court

1  DENIES summary judgment on Plaintiffs' first and second causes
2  of action.

3             4.   <u>Race and National Origin Discrimination</u>

4      Defendant seeks summary judgment on Plaintiffs' supposed
5  claims for race and national origin discrimination.  Mot. at 15.
6  However, Plaintiffs do not assert these claims in their
7  Complaint, nor do they make mention of them in their Opposition
8  brief.  The Court therefore need not address Defendant's request
9  for summary judgment on these nonexistent claims.

10             5.   <u>Retaliation Claims</u>

11      In their fourth and fifth causes of action, Plaintiffs
12  allege Nugget retaliated against them for complaining to their
13  supervisors that they were victims of racial and national origin
14  discrimination, in violation of Title VII and Section 1981.
15  FAC.  Defendant seeks summary judgment on these claims.

16      Title VII prohibits employers from discriminating against
17  an employee because an employee has opposed an unlawful
18  employment practice, "or because he has made a charge,
19  testified, assisted, or participated in any manner in an
20  investigation, proceeding or hearing [related to the unlawful
21  practice]."  42 U.S.C. § 2000e-3(a).  To prevail on their
22  retaliation claims, Plaintiffs must establish a prima facie case
23  of retaliation.  <u>Ray v. Henderson</u>, 217 F.3d 1234, 1240 (9th Cir.
24  2000).  If Plaintiffs establish a prima facie claim, the burden
25  shifts to Defendant "to articulate a legitimate
26  nondiscriminatory reason for its decision."  <u>Id.</u>  If Defendant
27  articulates such a reason, the burden shifts back to Plaintiffs
28  to show the reason "was merely a pretext for a discriminatory

1  motive." Id.

2              a.   Prima Facie Case

3       To establish a prima facie case of retaliation, Plaintiffs

4  must show that (1) they engaged in a protected activity;

5  (2) Nugget subjected them to an adverse employment action; and

6  (3) a causal link exists between the protected activity and the

7  adverse action. Ray, 217 F.3d at 1240. Defendant does not

8  dispute that Plaintiffs engaged in a protected activity when

9  they complained about the alleged discrimination. See Id. at

10 1240 n.3 (finding making an informal complaint with a supervisor

11 is a protected activity). The Court therefore only addresses

12 the last two factors.

13              (i)   Adverse Employment Action

14      The Ninth Circuit takes "an expansive view of the type of

15 actions that can be considered adverse employment actions."

16 Ray, 217 F.3d at 1241. Moreover, it has adopted the EEOC test,

17 finding an "adverse employment action" is adverse treatment that

18 is "reasonably likely to deter the charging party or others from

19 engaging in protected activity." Id. at 1246.

20      Plaintiffs argue Nugget subjected Ramirez-Castellanos to an

21 adverse employment action when they fired him for complaining

22 about being discriminated against. Opp'n at 20. Moreover, they

23 contend Nugget also subjected Espinoza to adverse employment by:

24 (1) not granting his transfer request, (2) unfairly scrutinizing

25 his work, (3) giving him his first negative performance review,

26 and (4) dismissing his discrimination complaints. Id. 20-21.

27 Viewing the evidence in the light most favorable to Plaintiffs,

28 the Court agrees that a jury could find Defendant subjected

1  Plaintiffs to an action of adverse employment.

2      First, termination constitutes an adverse employment

3  action.  See Ray, 217 F.3d at 1241 n. 4 (discussing Nidds v.

4  Schindler Elevator Corp., 113 F.3d 912, 912 (9th Cir. 1996).

5  While the question still remains as to whether Ramirez-

6  Castellanos' termination was casually linked to his alleged

7  reports of discrimination, there is no doubt that the

8  termination itself constitutes an adverse employment action.

9  Moreover, a jury could also find Espinoza was subjected to

10  adverse employment actions.  If proven, "undeserved performance

11  ratings . . . would constitute 'adverse employment [actions].'"

12  Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987).

13  Accordingly, a jury could find Defendant subjected Espinoza to

14  an adverse employment action when it gave him his first and only

15  negative performance review after he complained about

16  discrimination.

17                    (ii) Causal Link

18      When there is a close proximity in time between a protected

19  activity and the alleged adverse employment action, the casual

20  link "can be inferred from timing alone."  Thomas v. City of

21  Beaverton, 379 F.3d 802, 812 (9th Cir. 2004).

22      Here, according to Plaintiffs, Ramirez-Castellanos was

23  fired "one day after he complained about Sanchez's anti-

24  immigrant remarks."  Opp'n at 21.  Moreover, Nugget gave

25  Espinoza his first and only negative performance review "close

26  on the heels of his complaints."  Ray, 217 F.3d at 1244 (finding

27  a causal link exists when the adverse action was "implemented

28  close on the heels of [plaintiff's] complaints.").  Accordingly,

                          23

1  the Court finds the casual link between Plaintiffs' complaints

2  of discrimination and the adverse employment actions they were

3  subjected to, can be inferred from timing alone.  The Court

4  therefore need not address Plaintiffs' argument in the

5  alternative, that Nugget cannot meet its burden under an

6  affirmative defense to liability.  See Opp'n at 21.

7                    b.    Nondiscriminatory Reason

8      Because when looking at the evidence in the light most

9  favorable to Plaintiffs, they can establish a prima facie

10  retaliation case, the burden shifts to Defendant to provide a

11  nondiscriminatory reason for their alleged adverse actions.

12  Ray, 217 F.3d at 1240.  Defendant repeatedly argues that any

13  adverse employment action was actually a result of Plaintiffs'

14  poor employment performance.  Reply at 11.  Therefore, the

15  burden shift backs to Plaintiff to establish that this

16  nondiscriminatory reason is a "pretext[] for retaliation."  Ray,

17  217 at 1244.

18                    c.    Pretext for Reason

19      A plaintiff may establish that the employer's alleged

20  explanation is a pretext for impermissible retaliation by

21  "either directly persuading the court that a discriminatory

22  reason more likely motivated the employer or indirectly by

23  showing that the employer's proffered explanation is unworthy of

24  credence."  Yartzoff, 809 F.2d at 1377.

25      Plaintiffs argue they can proffer both direct and indirect

26  pretextual evidence to rebut Defendant's alleged

27  nondiscriminatory reasons.  Opp'n at 24-25.  For direct

28  evidence, Plaintiffs proffer an email in which a Nugget manager

24

1    asks a fellow employer to look for performance related conduct

2    to terminate or discipline Espinoza.  Id. at 24.  As for

3    Ramirez-Castellanos, Plaintiffs introduce a recorded call

4    between Plaintiff and his One Stop supervisor, in which the

5    supervisor explains that Nugget wants him fired because the

6    manager "doesn't want to hear any more complaints from you or

7    anyone else."  Id. at 25.  Lastly, as indirect evidence,

8    Plaintiffs re-establish the evidence they presented in making

9    their prima facie claim.  Id.  The Court finds this evidence to

10   be compelling.

11        Defendant argues Plaintiffs reliance on the evidence they

12   used in their initial prima facie burden, does not meet the

13   standard to show pretext.  Reply at 12.  But as stated above,

14   "[e]vidence already introduced to establish the prima facie case

15   may be considered," and there may even be cases "where [that]

16   initial evidence . . . will suffice to discredit the defendant's

17   explanation."  Yartzoff, 809 F.2d at 1377.  Moreover,

18   Defendant's argue the Court should not consider Plaintiff

19   Ramirez-Castellano's phone recording, because it was illegally

20   obtained.  Reply at 12.  Defendant's argue it is therefore

21   impermissible hearsay under the Federal Rules of Evidence.  Id.

22   However, the nonmoving party need not "produce evidence in a

23   form that would be admissible at trial in order to avoid summary

24   judgment."  Burch, 433 F. Supp. 2d at 1119.  Accordingly, the

25   Court will consider the recording to the extent it establishes

26   there is a genuine dispute of material fact as to this claim.

27        The Court finds in viewing the evidence in the light most

28   favorable to Plaintiffs, that a jury could find Plaintiffs have

1  shown Defendant's nondiscriminatory reason is pretextual.

2  Moreover, "a grant of summary judgment . . . is generally

3  unsuitable in Title VII cases in which the plaintiff has

4  established a prima facie case because of the elusive factual

5  question of intentional discrimination." Yartzoff, 809 F.2d at

6  1377.  The Court therefore DENIES summary judgment on

7  Plaintiffs' fourth and fifth causes of action for retaliation.

8                6.   Wrongful Termination in Violation of Public Policy

9         Defendant seeks summary judgment on Plaintiff Ramirez-

10  Castellanos' seventh cause of action for wrongful termination in

11  violation of public policy.  Mot. at 19.  As Defendant points

12  out, Plaintiff Ramirez-Castellanos does not respond to this

13  argument in Plaintiffs' opposition.  See generally Opp'n.  The

14  Court interprets Ramirez-Castellanos' failure to oppose this

15  argument as acquiescence of its merit.  The Court also finds

16  Defendant's argument that Ramirez-Castellanos has neglected to

17  clearly articulate the public policy upon which he bases his

18  claim (which is presumably based on FEHA) to be meritorious.  As

19  explained above, Raimrez-Castellanos is jurisdictionally barred

20  from bringing a FEHA claim.  Summary judgment on this cause of

21  action is GRANTED.

22

23                      III.   ORDER

24      For the reasons set forth above, the Court GRANTS Defendant

25  Nugget Markets' Motion for Summary Judgment on Plaintiffs' third

26  cause of action for hostile work environment under FEHA and sixth

27  cause of action for retaliation under FEHA.  The Court also

28  GRANTS Defendant Nugget Markets' Motion for Summary Judgment on

1  Plaintiff Ramirez-Castellanos' seventh cause of action for common

2  law wrongful discharge;

3      The Court DENIES Defendant Nugget Markets' Motion for

4  Summary Judgment on Plaintiffs' first, second, fourth and fifth

5  causes of action for hostile work environment and retaliation

6  under Title VII and 42 U.S.C. §1981.

7      IT IS SO ORDERED.

8  Dated: May 27, 2020

9

10                                         _____
                                           JOHN A. MENDEZ,
                                           UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28